[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10739
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00343-MW-CAS


DAMIEN M. JONES,

Plaintiff-Appellant,

versus

DEPARTMENT OF CORRECTIONS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 14, 2019)

Before MARCUS, WILSON and HULL, Circuit Judges.

PER CURIAM:

Damien Jones appeals the district court's order granting summary judgment in favor of the Florida Department of Corrections (FDOC) on his claim of retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-3(a).  Jones alleged that FDOC terminated his employment as a probation officer because he filed a complaint with the Florida Commission on Human Relations (FCHR) for unfair treatment by one of his supervisors, Matthew Sampson.  FDOC, in response, maintained that Jones was fired because his superiors discovered—while he was on administrative leave for allegedly threatening a coworker with a knife—proof that he had falsified information in his work files.

The facts established during discovery, viewed in the light most favorable to Jones, are as follows.  As soon as Sampson became the circuit administrator, he and Jones did not get along.  According to Jones, Sampson assigned him a higher caseload than other officers, made him travel to more remote locations, and ordered him to remove office décor that Sampson deemed offensive.  Jones believed that he was being discriminated against and, on May 10, 2016, he filed his FCHR complaint.[1]

---

[1] In his FCHR complaint, Jones claimed that he was being discriminated against based on his gender.  He did not raise that claim in the district court.

Then, in June 2016, an incident occurred during an argument about office furniture between Jones and a coworker, Jeremy Tyre. The facts of the incident were disputed. Jones claimed that he merely told Tyre to get out of his office. Tyre, however, claimed that Jones pulled out a pocketknife and threatened to stab him if he did not leave Jones's office. Tyre reported his version of the events several weeks later. Sampson learned of the incident, and the human resources department directed him to place Jones on administrative leave while this incident was investigated, which he did.[2]

Two days later, while Jones was still on leave, another supervisor discovered that Jones had falsely noted in the probation office's system that he had made contact with an offender at home, when, in fact, the offender was in jail. Upon learning of this, Sampson directed a full audit of Jones's files. Sampson also informed one of his superiors, James Perdue, of the incident. Notably, Perdue attested that he would have ordered the audit if Sampson had not. The audit revealed other falsified entries and missing information, such as Jones failing to follow up on offenders' work statuses. At this point, Sampson referred the matter to upper management with a recommendation that it terminate Jones's employment. On August 24, 2016, a six-member disciplinary action review team

---

[2] The record shows that in July 2016 FDOC was also investigating a claim of sexual harassment against Jones by a female employee. However, it was the incident with Tyre that precipitated Sampson placing him on administrative leave.

3

agreed with Sampson's recommendation and terminated Jones's employment.  The termination letter stated that the only bases of Jones's termination were the audit's findings and Jones's falsification of seeing an offender at home.

After discovery, FDOC filed a motion for summary judgment.  The district court granted the motion, determining that Jones failed to establish a causal connection between the filing of his FCHR complaint and his termination.  Specifically, the court concluded that intervening events—the knife incident and the audit of his records—led to Jones's termination, not the filing of his FCHR complaint.  It also concluded that Sampson was not involved in the decision to fire Jones.  Jones appeals the district court's decision.

I

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam).  We can affirm, however, on any basis supported by the record.  *See id.* at 1364.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A party cannot defeat summary judgment by relying on conclusory allegations, as we have "consistently held that conclusory allegations without specific supporting facts have no probative value" at summary judgment.  *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th

4

Cir. 2018).  "Speculation does not create a *genuine* issue of fact."  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

Title VII prohibits an employer from retaliating against an employee "because the employee has opposed any unlawful employment practice, or because of participation in a Title VII investigation or hearing."  *Furcron v. Mail Ctrs. Plus, LLC.*, 843 F.3d 1295, 1310 (11th Cir. 2016) (alterations accepted) (internal quotation mark omitted); *accord* 42 U.S.C. § 2000e-3(a).  Absent direct evidence of discrimination, we analyze claims for retaliation under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998).  "Under this framework, a plaintiff alleging retaliation must first establish a prima facie case by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action."  *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009).

Regarding this third element—establishing a causal link—we have noted that a plaintiff must show only "that the protected activity and the negative employment action [were] not completely unrelated."  *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1260 (11th Cir. 2012).  One way a plaintiff can meet this burden is by showing close temporal proximity between an employee's

protected conduct and the adverse employment action. *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). "But mere temporal proximity, without more, must be very close." *Thomas*, 506 F.3d at 1364 (internal quotation mark omitted). In *Thomas*, for example, we concluded that a three-month period between when an employee filed a sexual harassment complaint and when she was fired did not establish a causal connection. *Id.*

Under the *McDonnell Douglas* framework, if the plaintiff establishes a prima facie case of retaliation, the employer may then present one or more legitimate reasons for the adverse employment action. *Furcron*, 843 F.3d at 1310. If the employer does so, the burden shifts back to the employee to demonstrate that the employer's reasons were pretextual. *Id.* at 1310–11. To establish pretext, the employee must show that the employer's reasons were false and that the real reason was discrimination. *Brooks v. City Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). Where the record is sufficiently developed, we may address the issue of pretext in the first instance. *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 n.5 (11th Cir. 2004).

Here, Jones failed to establish a causal link between the filing of his FCHR complaint and his termination. The temporal proximity was not close enough to establish an inference of retaliation, as Jones was terminated over three months after he filed his complaint. *See Thomas*, 506 F.3d at 1364. Jones did not provide

6

further evidence showing that his termination was related to his complaint.  Rather, the evidence showed that Jones was fired because his supervisors discovered while he was on administrative leave that he had falsified his work records and neglected his duties on multiple occasions.  And he was placed on administrative leave because a coworker claimed that Jones had threatened him with a knife.  Accordingly, the district court did not err in granting summary judgment on Jones's retaliation claim, as he failed to establish a prima facie case of retaliation.

Further, even if Jones had established a prima facie case of retaliation, he failed to present evidence refuting FDOC's legitimate, non-retaliatory reasons for firing him.  *Furcron*, 843 F.3d at 1310–11.  The record supports FDOC's claim that it fired Jones because he falsified work documents and neglected his duties, and Jones did not demonstrate that these reasons were pretextual.  Accordingly, we affirm.

**AFFIRMED**